O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

GLOBAL LIVE EVENTS – IN          )     Case No. CV 13-8293 SVW
LIQUIDATION,                     )
                                 )
         Plaintiff,              )     ORDER DENYING
                                 )     DEFENDANTS VALENSI ROSE
         v.                      )     & MICHAEL MORRIS'S
                                 )     MOTION TO STAY DISTRICT
JA-TAIL ENTERPRISES, LLC, et     )     COURT PROCEEDINGS
al.,                             )     [41]
                                 )
         Defendants.             )
                                 )

I.    **INTRODUCTION**

       Plaintiff Global Live Events ("GLE") is a United Kingdom limited

partnership in liquidation.  In 2011, GLE retained defendant Valensi Rose, a Los

Angeles law firm, to represent GLE in connection with the production of a Michael

Jackson tribute concert in Britain.  A retainer agreement was signed on March 1,

2011.  Subsequently, GLE entered into a contract with defendant Ja-Tail

Enterprises to produce the concert in Cardiff, Wales.  (Ja-Tail Enterprises was

founded by Michael Jackson's sister La Toya Jackson and defendant Jeffré

Phillips.)  The concert went forward on October 8, 2011, but shortly thereafter,

GLE entered a form of bankruptcy protection under British law.

       GLE filed this action on November 7, 2013 against Valensi Rose and its

partner Michael Morris, and Ja-Tail and its officer Phillips, alleging breach of fiduciary duty, constructive fraud, money had and received, and fraudulent transfer.  Jurisdiction is based on diversity.  GLE alleges that Valensi Rose and Morris had several undisclosed conflicts of interest and engaged in a variety of financial transactions to defraud GLE.  The Complaint alleges that before entering into the Retainer Agreement, Valensi Rose created a California LLC which they called "GLE LLC" and opened a Chase Bank Account in its name.  GLE further alleges that after it transferred roughly $1 million to a Client Trust Account for the purpose of financing expenses related to Valensi Rose's representation, Valensi Rose improperly transferred those funds into the Chase Account, in such a way as to defraud GLE.

In its order of March 20, 2014 ("Arbitration Order") the Court granted in part and denied in part a motion by defendants Valensi Rose and Morris (hereinafter simply "Valensi Rose") to compel arbitration of GLE's claims against them.  The retainer agreement contains an arbitration clause applicable to "[a]ny controversy or claim by or against the Firm arising under this letter agreement, or the claimed breach thereof, including but not limited to any claim for malpractice or breach of fiduciary duty." (Arbitration Order at 2.)  The Court held that the reference to claims "arising under" the retainer agreement applied to GLE's claim for breach of fiduciary duty, but not to GLE's claims for fraud, money had and received, and fraudulent transfer. (*Id.* at 5.)  The Court accordingly ordered GLE to submit Claim 1 of its complaint to the Judicial Arbitration and Mediation Services ("JAMS") and stayed judicial proceedings on that claim.  The Court scheduled a jury trial for the remaining claims in the complaint for July 15, 2014, and directed that any requests to stay the trial be filed by April 7, 2014.  Defendant Valensi Rose then filed the instant motion seeking a stay of further judicial proceedings on Claims 3-5 of the complaint (insofar as they are brought against

2

1    Valensi Rose) pending the outcome of the arbitration on Claim 1.[1]  Defendants Ja-
2    Tail and Phillips did not file any request to stay the trial of the claims against them,
3    nor did they appear in court at the hearing on the motion on May 5, 2014.

4           On April 17, 2014, after GLE had filed its opposition to Valensi Rose's
5    motion for a stay, Valensi Rose filed a notice of appeal to the Ninth Circuit of the
6    Court's Arbitration Order.  Then, in its reply brief on the instant motion, Valensi
7    Rose cited the recently filed appeal as an additional reason that the Court "should
8    stay this action as against Valensi Rose, pending the completion of the
9    *arbitration*."  (Reply at 3 (emphasis added).)  Valensi Rose did not argue, however,
10   that the Court should stay proceedings pending the resolution of the appeal.  (*See*
11   *id.* at 1-6.)

12          At the hearing on this motion on May 5, 2014, Valensi Rose also orally
13   requested that the Court stay proceedings against it pending the outcome of its
14   appeal.  GLE opposed this request, citing *Murphy v. DirecTV, Inc.*, No. CV 07-
15   6465 FMC, 2008 WL 8608808 (C.D. Cal. July 1, 2008) in support of its argument
16   that district courts "are not required to automatically stay proceedings upon the
17   appeal of an order denying a motion to compel arbitration," but instead should
18   exercise their discretion to determine whether a stay is appropriate under the
19   circumstances of the particular case.  *Id.* at *1 (citing *Hilton v. Braunskill*, 481 U.S.
20   770, 776 (1987) & *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1411 (9th Cir.
21   1990)).  Valensi Rose disagreed and offered to provide case citations supporting its
22   argument that its notice of appeal of the Arbitration Order divested this Court of
23   jurisdiction over the claims that are the subject of the appeal.  Valensi Rose filed
24   the list of case citations the next day.  (Dkt 56.)  The cases in this list, however,
25   support precisely the same legal standard described by Judge Cooper in *Murphy*.
26   *See, e.g., Ontiveros v. Zamora*, No. CIV S-08-567 LKK, 2013 WL 1785891, at *1-

27   _____

28   [1]  Claim 2 of the complaint alleges breach of fiduciary duty by Ja-Tail and Phillips
     and does not name Valensi Rose or Morris.  (Compl. ¶¶ 60-65.)

3

2 (E.D. Cal. Apr. 25, 2013) (citing *Hilton*, 481 U.S. at 776 & *Britton*, 916 F.2d at 1412).

## II.    STAY PENDING ARBITRATION

### A.    Legal Standard

While the Federal Arbitration Act ("FAA") requires a court to dismiss or stay an arbitrable claim, "the FAA does not give courts express guidance on how to proceed" with respect to remaining non-arbitrable issues.  *Volkswagen of America, Inc. v. Suds of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007).  The Supreme Court has recognized that enforcement of agreements to arbitrate will inevitably result in "'piecemeal' litigation."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985).  Therefore, "[i]n some cases, . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration."  *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983).  "That decision is one left to the district court . . . as a matter of its discretion to control its docket."  *Id.*; *Mediterranean Enters, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983); *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see generally Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936) ("How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

Some courts have reasoned that staying proceedings on the nonarbitrable claims is only appropriate "'where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision.'" *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002) (unpublished) (quoting *Simitar Entm't, Inc. v. Silva Entm't, Inc.*, 44 F. Supp.2d 986, 997 (D. Minn. 1999)); *see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987) ("Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit.").  There may also be "reasons for avoiding a

duplication of effort in trying simultaneously, or even successively, the issues presented in [the arbitrable] claim and in [the non-arbitrable] claim." *United States ex rel. Newton v. Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985).  Nevertheless, unless it is clear in advance that the outcome of the arbitration will render further judicial proceedings unnecessary, the desire to avoid a duplication of effort does not dictate which proceeding should go first. *Cf. id.* ("[I]t was up to the district judge to determine which of the two claims should be first handled.")  A court may prefer to allow the arbitration to proceed first where "the type of controversy . . . involved seems one well-suited to the informal, and often expeditious, proceedings which generally characterize arbitration." *Id.*  In analyzing the relative efficiency of the available options, a court should consider the relationship between the arbitrable and the nonarbitrable claims and the relative strength of the claims, to the extent this can be assessed *ex ante*.  *See, e.g., Lake Commc'ns,, Inc. v. ICC Corp.*, 738 F.2d 1473, 1477 (9th Cir. 1984), *overruled on other grounds by Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1441 (9th Cir. 1994).

Courts also take into consideration the desire to avoid "inconsistent findings" or "inconsistent results." *Bischoff v. DirecTV, Inc.*, 180 F. Supp.2d 1097, 1114-15 (C.D. Cal. 2002).  This is easier said than done, however, for two reasons. First, it is difficult to assess in advance whether the result of one proceeding will have any collateral estoppel effect in the other.  *See Byrd*, 470 U.S. at 223 ("The collateral-estoppel effect of an arbitration proceeding is at issue only after arbitration is completed . . . .").; *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) ("arbitrators possess broad discretion to determine when they should apply offensive non-mutual collateral estoppel"); *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1132-34 (9th Cir. 2000) (arbitrator decides whether prior arbitral award or judgment should have preclusive effect); *Clark v. Bear Stearns & Co.*, Inc., 966 F.2d 1318, 1321 (9th Cir. 1992) (Applying collateral estoppel to an arbitration proceeding requires "an examination of the

record, if one exists, including any findings of the arbitrators," and "[t]he party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment . . . [by introducing] a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated."); *American Home Assur. Co. v. Vecco Concrete Constitutional. Co., Inc.*, 629 F.2d 961, 964 (4th Cir. 1980) ("arbitrator's findings will not be binding [in subsequent trial] as to those not parties to the arbitration"); *Vandenberg v. Superior Court*, 21 Cal. 4th 815, 831-33 (1999) (considering "whether private arbitration awards should have nonmutual collateral estoppel effect" and concluding that because "private arbitration is a contractual proceeding *whose scope and effect are defined and limited by the parties' consent*," "the public policy reasons against applying the collateral estoppel doctrine well outweigh those in favor of doing so."); G. Edward Fletcher III, *Learning to Live with the Federal Arbitration Act — Securities Litigation in a Post-McMahon World*, 37 Emory L.J. 99, 116-22 (1988) (discussing relationship between collateral estoppel and "the ordering problem," *i.e.,* whether arbitration should precede trials of nonarbitrable claims); *see generally* G. Richard Shell, *Res Judicata and Collateral Estoppel Effects of Commercial Arbitration,* 35 UCLA L. Rev. 623 (1988).  If an arbitrator's ruling or a court's judgment has an issue preclusive effect in the other forum, then this will reduce the chance of inconsistent results.  But without knowing whether one forum's judgment will have an issue preclusive effect in the other forum — before deciding whether to grant a stay — a desire to avoid inconsistent results does not counsel in favor of one forum preceding the other forum.

The second reason it can be difficult to avoid inconsistent results when related issues are submitted both to an arbitrator and a court is that the two proceedings are governed by different procedural and evidentiary rules, and indeed by different substantive legal standards.  *See Local 1445, United Food & Commercial Workers Int'l Union v. Stop & Shop Cos.*, 776 F.2d 19, 22 (1st Cir.

1985) ("Arbitrators are not required to follow principles of contract law or judicial precedent."). It should not be surprising that these differences will sometimes affect the outcome of the proceedings. Some inconsistency is therefore an inevitable result of the piecemeal litigation required by the FAA.

### B.   Analysis

It is beyond dispute that the five claims in the complaint are closely related. The sole arbitrable claim (Claim 1) alleges breach of fiduciary duty by Valensi Rose because (1) Valensi Rose represented GLE in contract negotiations and other legal matters relating to the concert without disclosing conflicts of interest; (2) Valensi Rose improperly transferred funds into and out of the GLE Trust Account; and (3) Valensi Rose failed to provide invoices and an accounting. (Compl. ¶¶ 54-59.)

Claim 2 alleges that defendants Ja-Tail and Phillips breached their fiduciary duty to GLE, which arose because they were members of GLE, by (1) failing to disclose conflicts of interest arising from their connection to Valensi Rose; (2) concealing the Chase Bank Account; and (3) improperly transferring funds out of the GLE Trust Account. (Compl. ¶¶ 60-65.)

Claim 3 alleges that all the defendants are liable for constructive fraud because they failed to disclose that funds were transferred into and out of the GLE Trust Account. (Compl. ¶¶ 66-76.)

Claim 4, for money had and received against Valensi Rose and Ja-Tail, alleges that these two defendants improperly transferred funds into and out of the GLE Trust Account. (Compl. ¶¶ 77-82.)

Claim 5, for fraudulent transfer, alleges that various defendants transferred various sums "without a proper business purpose" and without "GLE's knowledge and informed consent" into and out of the GLE Trust Account. (Compl. ¶¶ 83-92.)

All five claims refer to the same seven allegedly improper transfers of funds,

with slight variations.  The same four transactions (totaling $817,046.43) from the GLE Trust Account form the basis for every claim.  Two additional transfers totaling $148,000 from the GLE Trust Account are also the subject of Claims 2, 3, and 4.  In addition, all the claims except Claim 2 (the only claim that does not mention Valensi Rose) also complain about the treatment of a $171,000 refund that was received from Creative Artist Agency ("CAA"), that allegedly should have been credited to GLE based on a $250,000 deposit it had made to secure an artist's performance at the concert.  GLE complains that this refund should have been wired into GLE's Trust Account, and not to GLE's account at Barclay's Bank in England.

The differences between these five claims lies primarily in the legal theory employed and the particular defendants named.  The parties' arguments on the motion reveal that they both agree that the arbitrable and nonarbitrable claims are interrelated, and the resolution in one forum is likely to have an impact in the other forum.  GLE demonstrates this by arguing that "if any action should be stayed, it should be the arbitration because this Court's resolution of claims 2, 3, 4 and 5 (with respect to all defendants) would essentially render the arbitration moot." (Dkt 45: Opp'n at 14.)  Valensi Rose argues for the converse proposition:  "[A] decision by the arbitrator that the transfers were done with Plaintiff's knowledge and consent will necessarily 'gut' the remainder of Plaintiff's case.  Conversely, a decision by the arbitrator that Plaintiff did not know about, or consent to, the transfers will equally gut Valensi Rose's primary defense to all causes of action." (Dkt 49:  Reply at 4-5.)

The nonarbitrable claims predominate over the arbitrable claims inasmuch as there are more of them (four versus one) and they involve more parties (Ja-Tail and Phillips in addition to Valensi Rose and Morris).  However, the predominance inquiry should not be reduced to claim counting.  Here, the existence of the other three claims against Valensi Rose (Claims 3-5) is a result of GLE's decision to

plead alternative legal theories based on the same set of underlying facts.

It is impossible to assess at this stage of the proceedings the relative merit of the claims.  If GLE authorized the transfers or was not injured by them then it would appear that all of its claims would fail together.  On the other hand, if GLE did not authorize the transfers and the transfers caused it economic damage, then all its claims have potential merit.  As for the relative culpability of Valensi Rose in comparison to Ja-Tail, the parties cite no evidence bearing on this question.  Nor have the parties discussed the evidence relevant to the viability of the other elements of GLE's five causes of action.  Under these circumstances, this factor carries no weight.  *Cf. Genesco*, 815 F.2d at 856 (stay favored when "the nonarbitrable claims are of questionable merit.").

If arbitration on Claim 1 proceeds first and Valensi Rose is found liable, then presumably it will be liable for four of the transfers (totaling $817,046), plus any damages assessed for the allegedly improper refund of $171,000.  However, if GLE continued to pursue its claims relating to the other $148,000 in transfers, the arbitrator's finding would not necessarily terminate this litigation.  On the other hand, if Valensi Rose prevails, the question arises whether the arbitrator's finding on Claim 1 will have res judicata or collateral estoppel effect on Claims 2-5.  It is conceivable that the arbitrator's ruling would foreclose GLE's claims against Valensi Rose on the alternative legal theories set forth in Claims 3-5, but it is less clear that it would foreclose GLE's claims against Ja-Tail and Phillips.  The answer depends on the nature of the arbitrator's decision and whether Ja-Tail would be able to use it to invoke non-mutual defensive issue preclusion against GLE.  The parties have failed to address this question.

In contrast, if the trial proceeds first and GLE succeeds on Claims 3 or 5, GLE would have achieved everything it wants and the arbitration of Claim 1 would be moot.  Similarly, if GLE succeeds at trial only on Claim 4, then it would have no reason to arbitrate Claim 1, which involves the same transfers.  On the other

hand, if GLE succeeds at trial only on its claim against Ja-Tail and Phillips (Claim 2), but fails on all its other claims, then it seems unlikely that GLE would pursue arbitration simply to obtain damages based on the $171,000 CAA refund, in view of the risk that the arbitrator would give preclusive effect to the jury's verdict in favor of Valensi Rose.  Various other outcomes are possible at a trial because of the multiplicity of claims and defendants, but it is impossible to predict the effect of those judgments on the arbitration without understanding the preclusive effect the arbitrator would give the jury verdict.

Inconsistent verdicts are possible whether the trial precedes the arbitration or vice-versa, and can be avoided only if the second forum gives preclusive effect to the judgment of the first forum.  Thus, consideration of this factor does not favor or disfavor granting the motion for a stay.

It is often assumed that arbitration will be faster than trial.  *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) (one goal of FAA was to permit parties to choose their own arbitration processes to "increas[e] the speed of dispute resolution").  This assumption appears to underlie several courts' decisions to stay nonarbitrable claims pending the outcome of an arbitration.  *See, e.g., Newton*, 750 F.2d. at 1427 (Not erroneous for district court to allow arbitration to take place first where controversy was "well-suited to the informal, and often expeditious, proceedings which generally characterize arbitration.").  A stay of nonarbitrable claims causes little harm to the parties if, even without a stay, the trial would be likely to occur many months or years in the future.  Here, however, a trial is scheduled to begin little more than two months from now.  As of the date of the hearing on this motion, no arbitrator had even been appointed, and the parties provided no estimate of when the arbitration might commence.  This asymmetry in timing supports proceeding with the trial.

Moreover, regardless of what happens at the arbitration, GLE's claims against Ja-Tail and Phillips must still be tried (unless GLE abandons them).  Trial

10

on those claims in scheduled for July 15, 2014, and Ja-Tail did not request a stay. Valensi Rose's proposal to stay arbitration of Claims 3-5 only insofar as those claims are brought against itself, while the same claims are tried against Ja-Tail and Phillips, would be inefficient for the Court and witnesses and threatens a significant duplication of effort.  Valensi Rose argues that "if these proceedings are not stayed, the parties will have to conduct all of the same discovery in both actions since all of the same witnesses and all of the same evidence will be used in both proceedings."  (Reply at 5.)  But this would still be true if the trial is postponed until after the arbitration proceeding.

In short, it appears likely that the claims that will be tried will resolve a broader range of legal and factual issues involving all the relevant actors than the single claim that has been submitted to arbitration, and these claims are likely to be resolved before the arbitration on Claim 1 is complete.  Under these circumstances, a stay of the nonarbitrable claims pending the completion of arbitration is not the most efficient path forward.

## III.   STAY PENDING APPEAL

### A.   Legal Standard

A stay pending appeal "'is not a matter of right, even if irreparable injury might otherwise result.'"  *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Railway Co. v. United States*, 272 U.S. 658, 672 (1926)).  "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case."  *Id.* (citation and internal quotation marks omitted); *Hilton*, 481 U.S. at 777 ("[T]he traditional stay factors contemplate individualized judgments in each case.")  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  *Nken*, 556 U.S. at 433-34.  The Court should consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether

11

issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776.  The first two factors are the most critical.  *Nken*, 556 U.S. at 434.

## B.   Analysis

In assessing the likelihood that Valensi Rose will succeed on appeal, "it is not enough that the likelihood of success on the merits is 'better than negligible' or that there is a 'mere possibility of relief.'" *Lair v. Bullock,* 697 F.3d 1200, 1204 (9th Cir. 2012) (quoting *Nken*, 556 U.S. at 434).  The Ninth Circuit has explained that many of the formulations employed to describe this standard, such as "'reasonable probability,' 'fair prospect,' 'substantial case on the merits,' and 'serious legal questions . . . raised,' are largely interchangeable." *Id.*  "All of these formulations indicate that, at a minimum, a [stay applicant] must show that there is a substantial case for relief on the merits." *Id.* (citation and internal quotation marks omitted).  However, the applicant need not show that "it is more likely than not that they will win on the merits." *Id.* (quoting *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir.2011) (per curiam).

Valensi Rose has failed to make "a strong showing that [it] is likely to succeed on the merits" of its appeal.  *Hilton*, 481 U.S. at 776.  As described in the Arbitration Order, Valensi Rose included a narrow arbitration clause in its retainer agreement, covering only disputes "arising under" that agreement.  *See Mediterranean Enters*, 708 F.2d at 1464 ("We interpret 'arising hereunder' as synonymous with 'arising under the Agreement.'  The phrase 'arising under' has been called 'relatively narrow as arbitration clauses go,' . . . [and] is narrower in scope than the phrase 'arising out of or relating to,' the standard language recommended by the American Arbitration Association.")  Valensi Rose did not argue that Claims 3-5 allege breach of the retainer agreement. *Cf. Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 922-24 (9th Cir. 2011) (arbitration clause covering "[a]ny dispute arising under this Agreement" did not cover tort

claims where "[t]he present dispute does not turn on an interpretation of any clause in the contract" and "the parties point to no Agreement provision that Defendant allegedly breached.") GLE's claims may well "relate to" the retainer agreement, but Valensi Rose failed to establish that they "arise under" it. *Cf. Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) ("Arising under" arbitration clause covers contractual disputes but not tort claims, even if "the tort claim would not have arisen 'but for' the parties' [contract].")[2]

The second factor is whether Valensi Rose will be irreparably injured without a stay. In analyzing this factor, the Court assumes that Valensi Rose will eventually prevail on appeal and that by being forced in the interim to proceed to trial on what are in fact arbitrable claims, it will be permanently "deprived of the inexpensive and expeditious means by which [GLE and Valensi Rose] had agreed to resolve their disputes." *Alascom, Inc. v. ITT North Elec. Co.*, 727 F.2d 1419,

---

[2] In opposing Valensi Rose's motion to compel arbitration, GLE argued that the clause in the retainer agreement was narrow and did not apply to its claims, citing *Mediterranean Enters*, *Tracer Research*, and *Cape Flattery*. (Dkt 28: Am. Opp'n at 18-20.) Perhaps recognizing the distinct status of the breach of fiduciary duty claim, GLE added that "even if the Court somehow concluded that the fiduciary duty claim fell within the scope of the Arbitration Clause, [Valensi Rose] cannot seriously dispute that the remaining claims (for constructive fraud, money had and received and fraudulent transfer) are **not** within the scope of the limited Arbitration Clause in the Retainer Agreement." (*Id.* at 20 n.9.) This argument was also included in the original version of GLE's opposition brief filed prior to Valensi Rose's reply. (Dkt 24: Opp'n at 18-20 & n.9.) Yet Valensi Rose failed to distinguish these authorities or even address this argument in its reply. (Dkt 26: Reply at 8-9.) Valensi Rose's only argument on this subject was that "[t]he gist of the present lawsuit is clearly contained in the First and Second Causes of Action of the Complaint, which are both claims against the Defendants for breach of fiduciary duty." (*Id.* at 9.) Valensi Rose argued that these two claims clearly fall within the arbitration provision of the retainer agreement, and stated: "If it were not for the agreement for the Valensi Rose firm to provide legal services, there would be no fiduciary duty existing between the firm and its partners on the one hand, and GLE on the other." (*Id.*) The reply did not mention Claims 3-5. (*Id.*)

1422 (9th Cir. 1984).  The Ninth Circuit has described the loss of "the advantages of arbitration — speed and economy" as a consequence that is "serious, perhaps, irreparable." *Id.*  Here, it does not appear that Valensi Rose will lose any speed advantage by proceeding to trial.  Nevertheless, the Court assumes that it will be significantly more expensive for Valensi Rose to go to trial on Claims 3-5, followed by an arbitration proceeding on Claim 1, than it would be for Valensi Rose to proceed to arbitration on all four claims together, as it contends it is entitled to do.  Therefore, this factor favors granting a stay pending appeal.

As for the effect of a stay on the other parties to this matter, a stay would injure GLE by postponing resolution of its claims and any potential recovery of damages.  Defendants Ja-Tail and Phillips have not submitted any argument on this subject and the Court accordingly concludes that they have no interest in the resolution of this motion.  This factor marginally weighs against granting a stay.

The public interest will not be affected by the outcome of this private dispute between two business entities, nor by how quickly or efficiently it is resolved, except to the extent that the judiciary's costs are largely born by the public.

If Valensi Rose had shown that it has "a substantial case," *Lair,* 697 F.3d at 1204, for its view that the arbitration clause in its retainer agreement with GLE covers all four of the claims against it, the Court would grant a stay pending appeal in view of the probable injury to Valensi Rose caused by the burden of facing a jury trial.  But the arguments presented by Valensi Rose in its original motion to compel arbitration did not demonstrate that this is even a close or arguable issue, and its brief mention of the issue in the instant motion and at the hearing on the motion added nothing to its case.  (*See supra* n.2.)  Therefore, Valensi Rose has failed to carry its "burden of showing that the circumstances justify" entry of a stay pending appeal.  *Nken*, 556 U.S. at 433-34.

14

**IV.    ORDER**

      For the foregoing reasons, defendants' motion to stay proceedings in this Court on Claims 3-5 is hereby DENIED.

      IT IS SO ORDERED.

Dated:  May 8, 2014

_____
STEPHEN V. WILSON
United States District Judge

15